*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

―――――――――

**UNITED STATES**
**Appellee**

v.

**Juventino TOVARCHAVEZ, Specialist**
United States Army, Appellant

**No. 18-0371**
Crim. App. No. 20150250

Argued February 21, 2019—Decided May 31, 2019

Military Judges: Gregory Gross (trial) and
Timothy P. Hayes Jr. (*DuBay* hearing)

For Appellant: *Captain Augustus Turner* (argued); *Lieutenant Colonel Christopher P. Carrier, Lieutenant Colonel Tiffany D. Pond*, and *Major Todd W. Simpson* (on brief).

For Appellee: *Captain KJ Harris* (argued); *Colonel Steven P. Haight, Lieutenant Colonel Eric K. Stafford,* and *Major Wayne H. Williams* (on brief); *Captain Joshua B. Banister.*

Judge RYAN delivered the opinion of the Court, in which Judges OHLSON and SPARKS joined. Judge MAGGS filed a separate dissenting opinion, in which Chief Judge STUCKY joined.

―――――――――

Judge RYAN delivered the opinion of the Court.

Appellant was charged with two specifications of sexual assault in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2012), for sexually assaulting a fellow soldier, Specialist (SPC) JR, on two separate occasions. A panel of officer and enlisted members sitting as a general court-martial convicted Appellant, contrary to his plea, of one specification, and acquitted him of the other specification. He was sentenced to confinement for two years, reduction to E-1, forfeiture of all pay and allowances, and a dishonorable discharge. The convening authority approved the sentence.

The United States Army Court of Criminal Appeals (ACCA) affirmed the findings and the sentence as approved

by the convening authority. *United States v. Tovarchavez*, No. ARMY 20150250, 2018 CCA LEXIS 371, at \*28, 2018 WL 3570591, at \*11 (A. Ct. Crim. App. July 19, 2018). We granted Appellant's petition to review the following issue:

> Whether the Army court erred, first, in finding that this Court overruled sub silencio the Supreme Court holding in *Chapman v. California*, 386 U.S. 18, 24 (1967), and this Court's own holdings in *United States v. Wolford*, 62 M.J. 418, 420 (C.A.A.F. 2006), and in *United States v. Hills*, 75 M.J. 350, 357 (C.A.A.F. 2016), and, consequently, in testing this case using the standard for nonconstitutional error.

As an initial matter, we note that the ACCA made no such findings. Rather, it distinguished *United States v. Wolford,* 62 M.J. 418 (C.A.A.F. 2006), from this case, found that this Court's precedent established that forfeited *United States v. Hills,* 75 M.J. 350, 357 (C.A.A.F. 2016), errors are tested for "plain error," and conducted an Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2012),[1] analysis to determine whether the forfeited constitutional error "materially prejudiced Appellant's substantial rights." *Tovarchavez*, 2018 CCA LEXIS 371, at \*4–8, \*15–19, 2018 WL 3570591, at \*2–3, \*6–8. However, the ACCA did not determine whether the constitutional error in this case[2] was harmless beyond a reasonable doubt. *Id.* at \*19, 2018 WL 3570591, at \*8. Instead, it evaluated prejudice for nonconstitutional error using the effect-on-the-trial test announced in *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016). *See id.* at \*16–19, 2018 WL 3570591, at \*7–8.

This was an incorrect application of the law and flatly inconsistent with established precedent of this Court.

---

[1] Article 59(a), UCMJ, provides that "[a] finding or sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused."

[2] The error at issue in this case was a *Hills* error. *Tovarchavez*, 2018 CCA LEXIS 371, at \*3, 2018 WL 3570591, at \*1. In *Hills*, this Court concluded "that the instructions that accompanied the so-called propensity evidence in this case constituted constitutional error." 75 M.J. at 353, 356–57.

Contrary to the ACCA's holding,[3] the options available to a court in the military justice system under Article 59, UCMJ, are not a choice between "plain error" or "the *Chapman* standard." Rather, just as a "substantial right" can be either constitutional or nonconstitutional, "material prejudice" for purposes of Article 59, UCMJ, must be understood by reference to the nature of the violated right. Consistent with our precedent, we hold that where a forfeited constitutional error was clear or obvious, "material prejudice" is assessed using the "harmless beyond a reasonable doubt" standard set out in *Chapman v. California*, 386 U.S. 18 (1967). *United States v. Jones*, 78 M.J. 37, 45 (C.A.A.F. 2018).

That standard is met where a court is confident that there was no reasonable possibility that the error might have contributed to the conviction. *Chapman*, 386 U.S. at 24. We are unable to say with certainty that the erroneous propensity instruction at issue in this case "did not taint the proceedings or otherwise 'contribute to [Appellant's] conviction or sentence.'" *United States v. Williams*, 77 M.J. 459, 464 (C.A.A.F. 2018) (quoting *Hills*, 75 M.J. at 357). The decision of the ACCA is reversed.

### Facts and Procedural History

SPC JR testified at trial about two sexual assaults as follows. On September 5, 2014, SPC JR was sitting with Appellant in his truck. Appellant twice tried to kiss SPC JR, but she refused. Appellant then attempted to pull down SPC JR's pants, and, after a period of resistance, she gave up and Appellant penetrated her vagina with his penis. She did not report the incident, which was the basis for Specification 1 of the Charge.

On September 10, 2014, Appellant texted SPC JR about returning some military gear that he had borrowed from her. SPC JR agreed, and Appellant met her at her barracks room. After a brief interaction with Appellant, SPC JR went

---

[3] The lone dissenter at the ACCA, in contrast, persuasively and succinctly explained that the ACCA majority incorrectly applied this Court's controlling precedent. *Tovarchavez*, 2018 CCA LEXIS 371, at *28, 2018 WL 3570591, at *12 (Campanella, S.J., dissenting).

to her bedroom to grab her keys to leave. Appellant followed her, closed the bedroom door, and tried to kiss her. Appellant then pushed her onto her bed and tried to pull down her sweatpants. Once again, SPC JR attempted to resist, but Appellant was able to pull her sweatpants down far enough to penetrate her vagina with his penis. This incident was the basis for Specification 2 of the Charge.

The next day, SPC JR informed two friends as well as her parents about the sexual assault. Her father called the Criminal Investigation Division and reported the incident. SPC JR received a medical exam that revealed DNA profiles linked to both Appellant and an unknown individual.

As part of the investigation, SPC JR sent Appellant the following pretext messages:

> [SPC JR:] I'm not going to allow you to make me your sex toy anymore
>
> . . . .
>
> [Appellant:] What are talking about, this is just weird ill [sic] leave it at the company.
>
> [SPC JR:] What's weird is I told you no and you still forced me to have sex anyway
>
> [Appellant:] Im [sic] sorry for what ever happened between us . . . . [F]rom now on Im [sic] going to leave you alone. Im [sic] sorry.
>
> [SPC JR:] If your [sic] sorry why did you do it
>
> [Appellant:] I made a mistake by crossing the line, and I'm sorry for that, you deserve much more than that.

Appellant did not testify at trial. The defense theory of the case was that SPC JR did not credibly recount the events forming the basis of Specifications 1 and 2 of the Charge. Defense counsel also sought an instruction for a mistake of fact as to consent defense for both specifications. The military judge concluded that there was insufficient evidence to give the requested instructions.

At the close of evidence, the military judge informed counsel that he planned to give the panel the standard Military Rule of Evidence (M.R.E.) 413 instruction. Defense

4

counsel did not object. The military judge instructed the panel:

> If you determine by a preponderance of the evidence the offense alleged in Specification 1 occurred, even if you are not convinced beyond a reasonable doubt that the accused is guilty of that offense, you may nonetheless then consider the evidence of that offense for its bearing on any matter to which it is relevant in relation to Specification 2 of the Charge. You may also consider the evidence of such other sexual offense for its tendency, if any, to show the accused's propensity or predisposition to engage in sexual offenses.

Appellant was convicted of Specification 2 of the Charge, and the case came to the ACCA for review under Article 66, UCMJ, 10 U.S.C. § 866, where it was initially remanded for a *DuBay* hearing[4] on an unrelated matter. In between Appellant's court-martial and the final resolution of his appeal, this Court decided *Hills*, which held that the M.R.E. 413 propensity instruction violated the constitutional right of an accused to be presumed innocent until proven guilty. 75 M.J. at 357. Consequently, Appellant's failure to object constituted forfeiture rather than waiver and the ACCA was required to determine whether giving a constitutionally infirm instruction constituted "material prejudice." *Tovarchavez*, 2018 CCA LEXIS 371, at *3–4, 2018 WL 3570591, at *1–2.

The ACCA recognized that the instruction given in the instant case "was for all substantive purposes identical to the instruction . . . found to be in error in *United States v. Hills*." *Id.* at *3, 2018 WL 3570591, at *1. Yet it also determined that the *Hills* error was forfeited here, and despite clear precedent to the contrary, chose to assert that this Court's precedent required Appellant to "'show a reasonable probability that, but for the error,' the outcome of

---

[4] *United States v. DuBay*, 37 C.M.R. 411 (1967). *DuBay* hearings are an oft-utilized and "well-accepted procedural tool [used by appellate courts in the military] for addressing a wide range of post-trial collateral issues." *United States v. Fagan*, 59 M.J. 238, 241 (C.A.A.F. 2004).

the proceeding would have been different"—the prejudice analysis articulated in *Molina-Martinez*, 136 S. Ct. at 1343 (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004)).[5] *Tovarchavez*, 2018 CCA LEXIS 371, at *11–19, 2018 WL 3570591, at *5–7.

Of course, the error in *Molina-Martinez* was *not* a constitutional error, and its test is the "material prejudice" showing this Court requires for both preserved and unpreserved *nonconstitutional* errors. *United States v. Lopez*, 76 M.J. 151, 154, 156 (C.A.A.F. 2017) (internal quotation marks omitted) (citation omitted). But the test for *constitutional* error set forth in *Chapman* and long followed by this Court was not disturbed by *Molina-Martinez*, and "[w]hen [this Court reviews] a constitutional issue . . . for plain error, the prejudice analysis considers whether the error was harmless beyond a reasonable doubt." *Jones*, 78 M.J. at 45.

## Discussion

An appellant gets the benefit of changes to the law between the time of trial and the time of his appeal. *See Griffith v. Kentucky*, 479 U.S. 314, 328 (1987); *United States v. Mullins*, 69 M.J. 113, 116–17 (C.A.A.F. 2010) ("[O]n direct review, we apply the clear law at the time of the appeal, not the time of trial." (citing *United States v. Harcrow,* 66 M.J. 154, 159 (C.A.A.F. 2008))). Consequently, despite a failure to object at trial, the *Hills* error in this case is forfeited rather than waived. *Harcrow*, 66 M.J. at 157–58. Consonant with Article 59, UCMJ, for an appellant to prevail under plain error review, there must be an error, that was clear or

---

[5] While this formulation may resemble the harmless beyond a reasonable doubt standard applied to constitutional errors, it is distinct. In the context of nonconstitutional errors, courts consider whether there is a "*reasonable probability* that, but for the error, the outcome of the proceedings *would have been different.*" *Molina-Martinez*, 136 S. Ct. at 1343 (emphases added) (internal quotation marks omitted) (citation omitted). For constitutional errors, rather than the probability that the outcome would have been different, courts must be confident that there was *no reasonable possibility* that the error *might have contributed* to the conviction. *Chapman*, 386 U.S. at 24.

obvious, and which prejudiced a substantial right of the accused. *United States v. Sweeney*, 70 M.J. 296, 304 (C.A.A.F. 2011).

Whether preserved or forfeited error, a finding or sentence may thus only be corrected for interference with a substantial right involving an error of law. *See* Article 59, UCMJ; *see also, e.g.*, *United States v. Humphries*, 71 M.J. 209, 215 (C.A.A.F. 2012) ("The error here . . . implicates [the accused]'s substantial right to notice under the Fifth and Sixth Amendments."); *Sweeney*, 70 M.J. at 303–04 (determining that the erroneously admitted testimonial hearsay did not satisfy appellant's confrontation rights); *United States v. Wilson*, 54 M.J. 57, 59 (C.A.A.F. 2000) (finding that the accused failed to carry his burden where he only showed "a minor clerical error . . . , which falls short of the substantive legal error required by Article 59(a), UCMJ"). Where the error is constitutional, *Chapman* directs that the government must show that the error was harmless beyond a reasonable doubt to obviate a finding of prejudice.[6] *See Chapman*, 386 U.S. at 24 ("Certainly . . . constitutional error . . . casts on someone other than the person prejudiced by it a burden to show that it was harmless."); *see also Sweeney*, 70 M.J. at 304; *Harcrow*, 66 M.J. at 160.

Whether an error, constitutional or otherwise, constitutes "plain error" is a question of law that we review de novo. *United States v. Bowen*, 76 M.J. 83, 87 (C.A.A.F.

---

[6] While a different question than what prejudice must be established, which is clear, we recognize that this Court's precedent is less than clear regarding the party that bears the burden with *respect to prejudice*. Nonetheless, *Chapman—a case just like this one*—clearly dictates that, in the case of a constitutional error, the "beneficiary of the error," the Government here, must show that the error was harmless beyond a reasonable doubt. 386 U.S. at 24. To the extent that the discussion in *United States v. Olano*, 507 U.S. 725 (1993), suggests a different allocation of the burden, its interpretation is based on the text of Fed. R. Crim. P. 52(a) (preserved error) and Fed. R. Crim. P. 52(b) (forfeited error). *Olano*, 507 U.S. at 734–35. ("This burden shifting is dictated by a subtle but important difference in language between the two parts of [Fed. R. Crim. P.] 52."). In contrast, Article 59, UCMJ, does not delineate between preserved and forfeited error.

2017). In this case, all agree that there was error, that the error was constitutional in nature, and that, in light of *Hills*, the error was clear or obvious. The sole question is whether the error "materially prejudiced a substantial right of the accused." In answering that question, we must first determine under what standard we assess prejudice in this case. Appellant contends that "material prejudice" under Article 59(a), UCMJ, requires the application of *Chapman* to determine prejudice in the context of a forfeited constitutional error. We agree.

First, the overwhelming weight of this Court's precedent demonstrates that material prejudice for forfeited constitutional errors under Article 59, UCMJ, is assessed using *Chapman*'s "harmless beyond a reasonable doubt" test. *Jones*, 78 M.J. at 45. Second, and relatedly, any interpretation of "material prejudice" must be squared with *Chapman*'s requirement that constitutional error requires reversal of a conviction unless it can be shown "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." 386 U.S. at 24. Third, we are unpersuaded that the federal circuit courts' frequent application of a lower standard when assessing prejudice arising from forfeited constitutional errors either permits or requires us to jettison the *Chapman* standard for constitutional error when assessing prejudice under Article 59, UCMJ.

## A.

This Court applies *Chapman*'s "harmless beyond a reasonable doubt" standard when assessing prejudice for a forfeited constitutional error under Article 59, UCMJ. *See, e.g.*, *Jones*, 78 M.J. at 44–45; *United States v. Hoffmann*, 77 M.J. 414, 414 (C.A.A.F. 2018); *United States v. Payne*, 73 M.J. 19, 24–26 (C.A.A.F. 2014); *Harcrow*, 66 M.J. at 158, 160; *United States v. Powell*, 49 M.J. 460, 464 (C.A.A.F. 1998). We are neither given, nor are we able to find, a persuasive reason to depart from this long-standing and settled precedent. *See United States v. Andrews*, 77 M.J. 393, 399 (C.A.A.F. 2018) (observing that horizontal stare decisis requires an appellate court to " 'adhere to its own prior decisions, unless it finds compelling reasons to overrule itself' " (quoting *United States v. Quick*, 74 M.J.

332, 343 (C.A.A.F. 2015) (Stucky, J., with whom Ohlson, J., joined, dissenting))).

Despite this precedent, the Government, the ACCA, and the dissent assert that a different standard is warranted in this case. *Tovarchavez*, 2018 CCA LEXIS 371, at *19, 2018 WL 3570591, at *8. To support this flawed conclusion, they resort to the absence of a complete recitation of the *Chapman* standard in a fraction of our prior decisions involving forfeited constitutional errors—even though the overall structure and conclusion of those cases clearly embrace and apply *Chapman. Id.* at *15–19, 2018 WL 3570591, at *6–8.

For example, the Government points to our decision in *Humphries*, 71 M.J. 209. In that case, defense counsel failed to object to the government's failure to allege a terminal element on one of the charges—violations of the appellant's constitutional rights to notice under the Fifth and Sixth Amendment, a practice that had been permitted prior to our decision in *United States v. Fosler*, 70 M.J. 225 (C.A.A.F. 2011)—and we reviewed for plain error. *Humphries*, 71 M.J. at 211, 215. Consistent with the requirements of Article 59(a), UCMJ, we assessed prejudice for "material[] prejudice[] to a substantial right of the accused." 71 M.J. at 214 (first alteration in the original) (internal quotation marks omitted) (citation omitted). The Government gleans from this unremarkable incantation of a statutory requirement the conclusion that evaluating prejudice arising from forfeited constitutional errors using a lower standard "is not beyond the realm of this Court's precedent." But this interpretation of *Humphries* blithely ignores both our conclusion that assessing material prejudice in that case required us to "determine whether the constitutional error was harmless beyond a reasonable doubt" and our express refusal to apply the "reasonable probability" test from *Dominguez Benitez*, 542 U.S. at 82. *Humphries*, 71 M.J. at 215 & n.7.[7]

---

[7] It further ignores the obvious: the dissent in that case specifically argued that we erred in failing to apply *Dominquez Benitez*

Along the same lines, both the ACCA and the Government suggest that our recent decisions in *United States v. Guardado*, 77 M.J. 90 (C.A.A.F. 2017), and *Williams*, 77 M.J. 459, are contrary to, or undermine, our precedent applying the *Chapman* standard to forfeited constitutional errors. *Tovarchavez*, 2018 CCA LEXIS 371, at *10–11, *15–19, 2018 WL 3570591, at *4, *6–7. We disagree.

*Guardado* stated that plain error review for forfeited *Hills* errors requires a determination that: "(1) there was error, (2) such error was clear or obvious, and (3) *the error materially prejudiced a substantial right of the accused.*" 77 M.J. at 93 (emphasis added). *Williams* cited this articulation of the plain error standard from *Guardado* but revised the third prong of the analysis to require that the error simply be "prejudicial." 77 M.J. at 462. Grasping at thin reeds indeed, both the ACCA and the Government unreasonably cling to the fact that in both *Guardado* and *Williams*, this Court concluded that the respective *Hills* errors were not "harmless"—as opposed to finding they were not "harmless beyond a reasonable doubt"—and thus concluded that a lower standard was *required* by our precedent.[8] *Tovarchavez*, 2018 CCA LEXIS 371, at *10–11, *15–19, 2018 WL 3570591, at *4, *6–7.

The absence of the precise "harmless beyond a reasonable doubt" articulation in *Guardado* and *Williams* notwithstanding, it is again clear that both decisions rely on the *Chapman* standard when assessing material prejudice. In *Guardado*, this Court concluded that it was not "convinced that the erroneous propensity instruction played *no role in Appellant's conviction.*" 77 M.J. at 95 (emphasis

---

and *Olano* to forfeited constitutional error. *See Humphries*, 71 M.J. at 220–22 (Stucky, J., dissenting).

[8] The ACCA also points to this Court's use of the *Molina-Martinez* test in both *Lopez*, 76 M.J. at 154, and *United States v. Robinson*, 77 M.J. 294, 299 (C.A.A.F. 2018) (quoting *Lopez*, 76 M.J. at 154). However, in both *Lopez* and *Robinson* that test was only used to evaluate prejudice arising from forfeited nonconstitutional errors. There was also a *preserved* constitutional error in *Robinson* that was evaluated for harmlessness beyond a reasonable doubt. *See Robinson*, 77 M.J. at 298–99.

added). And we stated in *Williams* that "we simply cannot be certain that the erroneous propensity instruction did not taint the proceedings or otherwise contribute to the defendant's conviction or sentence." 77 M.J. at 464 (internal quotation marks omitted) (citation omitted).

Both articulations are clear applications of the language from *Fahy v. Connecticut*, 375 U.S. 85, 86–87 (1963) (requiring "a reasonable possibility that the evidence complained of might have contributed to the conviction"), which *Chapman* said was no different than its "harmless beyond a reasonable doubt" standard.[9] 386 U.S. at 24. Thus, while the language certainly could have been more precise, we reject any suggestion that our decisions in *Guardado* and *Williams* endorsed a different standard for material prejudice or sub silentio overruled precedent that holds squarely to the contrary.[10]

This precedent, viewed in tandem with our cases assessing prejudice for nonconstitutional errors, demonstrates clear direction running through our case law: we test for prejudice based on the nature of the right violated, whether the error is preserved or not. *Compare, e.g.*, *Bowen*, 76 M.J. at 87 (evaluating preserved nonconstitutional evidentiary error based on whether it "ha[d] a substantial influence on the findings" (internal quotation marks omitted) (citation omitted)),[11] *and Lopez*,

---

[9] Even the Government recognized that "this language sounds close to that used for a harmless beyond a reasonable doubt standard."

[10] We separately note that the ACCA's analysis inexplicably appears to confuse and conflate the statutory standard required by Article 59(a), UCMJ, to set aside errors of law ("materially prejudices the substantial rights of the accused"), which applies to both preserved and forfeited error, with the specific test for de-termining material prejudice in the context of nonconstitutional errors ("reasonable probability that, but for the error, the outcome of the proceeding would have been different") articulated most re-cently in *Molina-Martinez*, 136 U.S. at 1343 (internal quotation marks omitted) (citation omitted).

[11] The analysis of prejudice in *Bowen* bears close resemblance to the effect-on-the-trial analysis required by *Molina-Martinez*. *Compare Bowen*, 76 M.J. at 89 (finding no prejudice because "we

76 M.J. at 154 (evaluating forfeited nonconstitutional evidentiary error using *Molina-Martinez*'s effect-on-the-trial test), *with, e.g.*, *United States v. Hukill*, 76 M.J. 219, 222 (C.A.A.F. 2017) (evaluating preserved *Hills* error under *Chapman*'s "harmless beyond a reasonable doubt" rubric), *and Jones*, 78 M.J. at 45 (evaluating forfeited Confrontation Clause error using the *Chapman* test).[12]  The ACCA's contrary conclusion was misplaced.

We further note that given our clear precedent, to the extent a few outlying cases are purportedly contrary (and we repeat, they are not), it is for this Court, not the ACCA, to overrule our precedent. *United States v. Davis*, 76 M.J. 224, 228 n.2 (C.A.A.F. 2017) ("It is this Court's prerogative to overrule its own decisions." (citing *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989))). Both the Government and the ACCA should be well familiar with the proposition that "overruling by implication is disfavored." *United States v. Pack*, 65 M.J. 381, 383 (C.A.A.F. 2007); *see also Agostini v. Felton*, 521 U.S. 203, 237 (1997) ("[Lower courts] should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." (internal quotation marks omitted) (citation omitted)).[13]

---

lack confidence that the panel members were not influenced by the improper hearsay testimony in this case"), *with Molina-Martinez*, 136 S. Ct. at 1343 (requiring a "reasonable probability that, but for the error, the outcome of the proceedings would have been different." (internal quotation marks omitted) (citation omitted)).

[12] This makes sense: the statutory requirement to determine whether an appellant has sustained "material[] prejudice[] [to a] substantial right[]" is only given legal effect when a standard is employed to determine whether a "substantial right[]" of the appellant has been *prejudiced*. *See, e.g.*, *Lopez*, 76 M.J. at 154; *Humphries*, 71 M.J. at 214–15.

[13] For example, while the ACCA understood that it was bound by our decision setting forth the burden-shifting prejudice analysis in *United States v. Paige*, 67 M.J. 442, 449 (C.A.A.F. 2009), it noted that our recent cases reviewing forfeited constitutional error have omitted *Paige*'s burden shift, *Tovarchavez*, 2018 CCA LEXIS 371, at *9–10, 2018 WL 3570591, at *4, and it rightly

**B.**

The Government nonetheless argues that we need not apply the *Chapman* standard to the forfeited constitutional error in this case because *Chapman* is distinguishable. The Government argues that the Supreme Court in *Chapman* was primarily concerned with defining the "harmless beyond a reasonable doubt" standard, rather than drawing distinctions between preserved and unpreserved errors, and therefore it may not be the appropriate standard in all cases involving forfeited constitutional error. This effort to distinguish *Chapman* is unpersuasive.

First, whatever the Supreme Court's primary concern, *Chapman* itself clearly involved forfeited constitutional error. At the time of petitioners' trial in *Chapman*, the California Constitution permitted the prosecution to argue to the jury that it should draw adverse inferences regarding petitioners' guilt due to their failure to testify. 386 U.S. at 19. After Chapman's trial, but before his appeal to the California Supreme Court, the Supreme Court decided *Griffin v. California*, 380 U.S. 609 (1965), which invalidated the California constitutional provision at issue. *Chapman*, 386 U.S. at 19. There is no indication that petitioners objected at trial to the prosecution's argument, yet the Supreme Court in *Chapman* did not treat the error as waived. *See id.* at 19–20. The Supreme Court has since clearly acknowledged that when there is a change in the law during the pendency of the appeal, the error is deemed forfeited rather than waived. *Johnson v. United States*, 520 U.S. 461, 467 (1997).

The Supreme Court granted certiorari in *Chapman* to determine whether a violation of petitioners' *Griffin* rights

emphasized the illogic of that burden-shifting standard. *Tovarchavez*, 2018 CCA LEXIS 371, at \*9–10, 2018 WL 3570591, at \*4, \*6 ("As a matter of logic, if appellant has established material prejudice to a substantial right, how could the government ever be able to show that the error was harmless beyond a reasonable doubt?"). We agree this standard is illogical, because, of course, material prejudice in this context means that the constitutional error is not harmless beyond a reasonable doubt. *Chapman*, 386 U.S. at 24.

was, or could ever be, a harmless error. 386 U.S. at 20. In fashioning its "harmless-constitutional-error rule," the Supreme Court recognized that, while "some constitutional rights [are] so basic to a fair trial that their infraction can never be treated as harmless error," there could be certain constitutional errors that "in the setting of a particular case are so unimportant and insignificant that they may . . . not requir[e] the automatic reversal of the conviction." *Id.* at 22–23 (discussing structural error and harmless error). The Supreme Court further emphasized that the applicable federal statute demonstrated an intention not to treat errors that "affect [the] substantial rights" of a party as harmless. *Id.* at 22. Restating and reaffirming its articulation of "harmless error" from *Fahy*, 375 U.S. at 86–87 (requiring "a reasonable possibility that the evidence complained of might have contributed to the conviction"), the Supreme Court held "that before a constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman*, 386 U.S. at 24.

Here, as in *Chapman*, Appellant's case involves an error of constitutional dimension that arose only during the pendency of his appeal. Where the precedent of the Supreme Court has direct application to a case, "[this Court] should follow the case which directly controls."). *Rodriguez de Quijas*, 490 U.S. at 484. There is no Supreme Court precedent that meaningfully narrows *Chapman*'s application to this case. Nothing in *Chapman*'s logic limits it in the way that the Government proposes, nor is there any legitimate military justification for interpreting "material prejudice" under Article 59(a), UCMJ, differently for preserved and forfeited constitutional errors. And, "[a]bsent articulation of a legitimate military necessity or distinction, or a legislative or executive mandate to the contrary, this Court has a duty to follow Supreme Court precedent." *United States v. Cary*, 62 M.J. 277, 280 (C.A.A.F. 2006). We thus reject the Government's invitation to overrule our precedent that relies on *Chapman*.

## C.

The ACCA relied on federal circuit courts' precedent in ignoring *Chapman*'s application to forfeited constitutional error. *Tovarchavez*, 2018 CCA LEXIS 371, at *16–19, 2018

WL 3570591, at *7. To be certain, the federal circuit courts appear to regularly evaluate prejudice arising from forfeited constitutional errors by requiring an appellant to establish that, "had the error not occurred, there is a 'reasonable probability' that" the outcome would have been different. *United States v. Guzmán*, 419 F.3d 27, 30 (1st Cir. 2005) (citation omitted) (reviewing a forfeited *Booker* error); *see, e.g., United States v. Ameline*, 409 F.3d 1073, 1078 (9th Cir. 2005) (same); *United States v. Rodriguez*, 398 F.3d 1291, 1299 (11th Cir. 2005) (same). And we often both review and give persuasive weight to the decisions of the federal circuit courts of appeal. *See, e.g.*, *Loving v. United States*, 62 M.J. 235, 248, 259 (C.A.A.F. 2005) (citing with approval and relying on cases from the United States Courts of Appeal for the Tenth and D.C. Circuits for their persuasive reasoning). Nevertheless, we decline to follow their lead because we do not find a satisfactory rationale for the federal courts' side stepping of *Chapman* and we must interpret our own statute consistent with our precedent.

Article 59(a), UCMJ, only permits appellate error correction where the error "materially prejudices . . . substantial rights." This is true regardless of whether the error was preserved or forfeited. As discussed *supra* pp. 8–12, the settled practice of this Court, consonant with the statutory requirements of Article 59(a), UCMJ, is to assess prejudice—whether an error is preserved or not—based on the nature of the right.

The federal circuit courts review errors under a different framework: preserved error under Fed. R. Crim. P. 52(a) and forfeited error under Fed. R. Crim. P. 52(b). For forfeited errors they apply the four-prong test set out in *Olano*, 507 U.S. at 734: (1) "There must be an error or defect" that the appellant has not affirmatively waived; (2) it "must be clear or obvious"; (3) it "must have affected the appellant's substantial rights," i.e., " 'affected the outcome of the district court proceedings' "; and (4) if the three other prongs are satisfied, the court of appeals has the *discretion* to remedy the error if it " 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " *Puckett v. United*

*States*, 556 U.S. 129, 135 (2009) (alteration in original) (citing *Olano*, 507 U.S. at 732–36).[14]

Nothing in *Olano* purported to overrule *Chapman*—indeed, it dealt with an unpreserved nonconstitutional error rather than constitutional error.[15] Nonetheless, in the time since *Olano* was decided, the federal courts have not applied *Chapman* when assessing prejudice for unpreserved constitutional errors; instead, they have applied several formulations of lower standards for assessing prejudice without discussion of *Chapman. See, e.g.*, *United States v. Benford*, 875 F.3d 1007, 1016–17 (10th Cir. 2017) (applying *Molina-Martinez* to test prejudice); *United States v. Cardena*, 842 F.3d 959, 998 (7th Cir. 2016) (same); *United States v. Hastings*, 134 F.3d 235, 243–44 (4th Cir. 1998) (reviewing for plain error "[b]ecause [the appellant] failed to object in a timely fashion to the instruction" and assessing prejudice based on whether "the erroneous 'use' instruction given by the district court resulted in [the appellant's] conviction"); *United States v. Wibhey*, 75 F.3d 761, 769 (1st Cir. 1996) (finding *Chapman* inapplicable to a forfeited constitutional error without analysis and assessing prejudice based on whether it " 'affected the outcome of the [d]istrict [c]ourt proceedings' " (quoting *Olano*, 507 U.S. at 734)).[16]

---

[14] In cases applying "plain error" review, this Court does not apply the fourth prong of the *Olano* test. *See, e.g.*, *Humphries*, 71 M.J. at 214; *United States v. Girouard*, 70 M.J. 5, 11 (C.A.A.F. 2011) (applying the three-prong military "plain error" test). This divergence from federal practice is regularly justified by the differences between Article 59, UCMJ, and Fed. R. Crim. P. 52(b). *See, e.g.*, *United States v. Tunstall*, 72 M.J. 191, 196–97 & n.7 (C.A.A.F. 2013); *Powell*, 49 M.J. at 463–65.

[15] Later cases—*Johnson* and *Cotton*—involved forfeited constitutional error, but in both cases the Supreme Court side stepped the issue of prejudice and resolved the case on the fourth prong of *Olano* (which has not been adopted in the military system, *see supra* note 14). *Johnson*, 520 U.S. at 469; *Cotton*, 535 U.S. 625, 632–33 (2002).

[16] While it does not apply *Chapman* to forfeited constitutional errors, the United States Court of Appeals for the Tenth Circuit qualifies its application of the plain error test in cases involving

While we need not reconcile the decisions of other courts with Supreme Court precedent, a few observations explain why we decline to adopt their practice. First, none of these cases addresses the readily apparent tension between their prejudice analysis, based on *Olano's* analysis of a forfeited nonconstitutional error, and *Chapman's*, which involved a forfeited constitutional error.

Second, *Olano* did not suggest that Fed. R. Crim. P. 52(a) and Fed. R. Crim. P. 52(b) require different standards for determining whether an error is prejudicial. *Olano*, 507 U.S. at 734. Regarding the prejudice analysis, the Supreme Court stated, "[Fed. R. Crim. P.] 52(b) normally requires the same kind of inquiry [as Fed. R. Crim. P. 52(a)]. . . ." *Id.* Nevertheless, many federal circuit courts have relied on *Olano*'s "affected the outcome of the district court proceedings" articulation, *see, e.g.*, *Wibhey*, 75 F.3d at 769; *United States v. Turcks*, 41 F.3d 893, 898 (3d Cir. 1994), which is strikingly similar to the "reasonable probability that, but for the error, the outcome of the proceeding would have been different" articulation from *Molina-Martinez* and *Dominguez Benitez*.

Third, both Fed. R. Crim. P. 52(a), which covers "harmless error," and Fed. R. Crim. P. 52(b), which covers "plain error," limit appellate review to errors that "affect substantial rights," and an error that "affect[s] substantial rights," is one that is prejudicial. *Olano*, 507 U.S. at 732, 734. And while the text of Fed. R. Crim. P. 52(a) itself draws no distinction between constitutional and nonconstitutional errors, federal courts regularly evaluate prejudice arising from preserved errors based on the nature of the right.[17]

---

potential constitutional errors. *See Benford*, 875 F.3d at 1016 (noting that it applies the plain error rule "less rigidly when reviewing a potential constitutional error" (quoting *United States v. James*, 257 F.3d 1173, 1182 (10th Cir. 2001)).

[17] We separately note that the Supreme Court's stated interest in a prejudice standard that "encourage[s] timely objections and reduce[s] wasteful reversals," *Dominguez Benitez*, 542 U.S. at 82, is inapposite to this case given that "any objection by Appell[ant] at trial would have been futile based on the law at the time." *Humphries*, 71 M.J. at 215 n.7. The "sandbagging" concerns

*See, e.g.*, *United States v. Hasting*, 461 U.S. 499, 507–12 (1983) (applying *Chapman* to evaluate prejudice arising from *Griffin* error); *Kotteakos v. United States*, 328 U.S. 750, 763–65 (1946) (determining prejudice from a nonconstitutional error based on the effect on the outcome of the proceeding). Fed. R. Crim. P. 52(b) utilizes the same "affect substantial rights" language, yet federal courts inexplicably evaluate prejudice arising from both constitutional and nonconstitutional errors using the same "effect-on-the-trial" analysis.

Fourth, the position taken by the ACCA has been raised in dissent myriad times. *See Humphries*, 71 M.J. at 220–22 (Stucky, J., dissenting); *Paige*, 67 M.J. at 452–54 (Stucky, J., dissenting in part and concurring in the result); *United States v. Gilley*, 56 M.J. 113, 127–30 (C.A.A.F. 2001) (Sullivan, J., concurring in part and dissenting in part); *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000) (Sullivan, J., concurring); *Wilson*, 54 M.J. at 60–62 (Sullivan, J., concurring in part and dissenting in part); *Powell*, 49 M.J. at 466 (Sullivan, J., concurring in the result). And we have repeatedly rejected the argument, presented in each of those cases, that, when assessing prejudice under Article 59, UCMJ, we either should or must follow the plain error doctrine applied in the federal courts. The mere existence of the labored and erroneous CCA opinion in this case or dissents in other cases from this Court neither undermines the force of stare decisis nor makes our precedent unworkable. *See Payne v. Tennessee*, 501 U.S. 808, 827 (1991).

We are simply unable to cogently distill a compelling, let alone persuasive, rationale based on the federal courts' treatment of Supreme Court precedent or their analysis of Fed. R. Crim. P. 52(a) and (b) to jettison our precedent regarding Article 59, UCMJ. Therefore, when interpreting this separate statute that governs the military justice system, we will still apply the *Chapman* standard when assessing prejudice for forfeited constitutional errors—cases

---

identified in *Puckett*, 556 U.S. at 134 (internal quotation marks omitted) (citations omitted), are simply not present here.

just like *Chapman. See Rodriguez de Quijas*, 490 U.S. at 484 ("If a precedent of this Court has direct application in a case . . . [this Court] should follow the case which directly controls. . . ."); *Pack*, 65 M.J. at 385 ("[L]ower courts should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." (internal quotation marks omitted) (quoting *Agostini*, 521 U.S. at 237)).

### Prejudice

Given our holding in *Hills*, the propensity instruction at issue is undeniably clear or obvious error at the time of the appeal. *Williams*, 77 M.J. at 463. Thus, the question before us is whether such error materially prejudiced Appellant's substantial rights. At issue here is Appellant's right to be presumed innocent until proven guilty, a "foundational tenet" of the Fifth Amendment's Due Process Clause, and a substantial right infringed upon by the erroneous instruction. *Hills* 75 M.J. at 356 (citing *In re Winship*, 397 U.S. 358, 363 (1970)). Under Article 59(a), UCMJ, there is material prejudice where "we simply cannot be certain that the erroneous propensity instruction did not taint the proceedings or otherwise 'contribute to the defendant's conviction or sentence.'" *Williams,* 77 M.J. at 464 (quoting *Hills*, 75 M.J. at 358); *see also Chapman*, 386 U.S. at 24.

The ACCA, while finding that the evidence against Appellant in this case was significant, was not convinced that the error was harmless beyond a reasonable doubt. *Tovarchavez*, 2018 CCA LEXIS 371, at *19–22, 2018 WL 3570591, at *8–9. Noting that "there is a wide gulf between testing for plain error and testing for constitutional harmlessness," the ACCA determined that the weight of the evidence fell between the two standards of review.[18] *Id.* at *22, 2018 WL 3570591, at *9.

---

[18] In the interest of clarity, we note, as demonstrated throughout this opinion, that distinguishing between plain error and constitutional harmlessness is analytically flawed. The proper distinctions, rather, are between preserved and forfeited error and constitutional and nonconstitutional rights. Forfeited errors are subject to plain error review, while preserved errors are not. Un-

The ACCA's conclusion that this *Hills* error was not harmless beyond a reasonable doubt was supported by two specific observations. First, while SPC JR's testimony describing the event was supported by DNA evidence, the DNA evidence did not directly contradict the defense theory of the case. *Id.* at *22, 2018 WL 3570591, at *9. Second, Appellant's text message apologies do not unassailably establish his consciousness of guilt.

First, the presence of DNA was entirely consistent with the defense theories that that SPC JR either consented or that Appellant acted under a reasonable mistake of fact as to consent, the mere presence of his DNA does not defeat his defense. Second, while Appellant's text message apologies could be interpreted as establishing consciousness of guilt, they could also have been "statements from someone who knows they have acted inappropriately, but not criminally." *Id.*, 2018 WL 3570591, at *9. Third, Appellant was acquitted of the Specification 1, making it less clear that the bootstrapping effect of the instruction did not "tip[] the balance" with respect to the members' ultimate determination regarding Specification 2. *Hills*, 75 M.J. at 358.

Accordingly, we are unable to say with certainty that the erroneous propensity instruction did not taint the proceedings or otherwise contribute to Appellant's conviction or sentence. Because the error was not harmless beyond a reasonable doubt, we must set aside the findings and sentence.

## Judgment

The judgment of the United States Army Court of Criminal Appeals is reversed, and the findings and sentence are set aside. The record is returned to the Judge Advocate General of the Army. A rehearing is authorized.

---

der Article 59, UCMJ, all errors of law—preserved or not—must have prejudiced an appellant's rights, and the test we employ to determine prejudice depends on the nature of the right. *See supra* pp. 8–12.

Judge MAGGS, with whom Chief Judge STUCKY joins, dissenting.

Article 59(a), Uniform Code of Military Justice (UCMJ), provides: "A finding or sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." 10 U.S.C. § 859(a) (2012). This statutory provision establishes a test of material prejudice, not a test of harmlessness beyond a reasonable doubt. This Court must accept the "balance achieved by Congress" in enacting the UCMJ unless its provisions are unconstitutional. *Weiss v. United States*, 510 U.S. 163, 181 (1994). Accordingly, when this Court hears an appeal, we must review errors for material prejudice under Article 59(a), UCMJ, *unless the United States Constitution requires us to apply a different test.*

No one disputes that the material prejudice test of Article 59(a), UCMJ, is constitutional when we review cases that do not involve constitutional errors. *See, e.g.*, *United States v. Hamilton*, __ M.J. __ (12) (C.A.A.F. 2019) (applying the material prejudice test of Article 59(a), UCMJ, when reviewing an error under the Rules for Courts-Martial). In addition, no one disputes that when we review a *preserved* objection to a constitutional error, we cannot apply the material prejudice test of Article 59(a), UCMJ, because to do so would be unconstitutional. The United States Supreme Court held in *Chapman v. California* that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." 386 U.S. 18, 24 (1967).

The question in this case is whether the Constitution also requires us to apply *Chapman*'s harmlessness beyond a reasonable doubt test when we review a *forfeited* objection to a nonstructural constitutional issue. Unlike the Court, I conclude that the answer is no.[1] Although the Supreme Court did not distinguish between preserved and forfeited objections in *Chapman*, the Supreme Court in subsequent

---

[1] Judge Sullivan previously reached the same conclusion in his separate opinion in *United States v. Powell*, 49 M.J. 460, 466 (C.M.A. 1998) (Sullivan, J., concurring in the result).

cases has not applied *Chapman*'s test when reviewing for-
feited constitutional objections.

In *United States v. Olano*, 507 U.S. 725 (1993), a district
court allowed an alternate juror to observe the jury's delib-
erations during the respondent's criminal trial. *Id.* at 727.
The respondent did not object to this procedure at trial, but
argued on appeal that the presence of the alternate juror vi-
olated the Federal Rules of Criminal Procedure. *Id.* at
728−30. The Supreme Court ruled that the respondent had
forfeited his objection to this error by not raising it at trial.
*Id.* at 730−31. The Court then announced that under Fed. R.
Crim. P. 52(b), an appellate court may consider a forfeited
objection to an error at trial only if the appellate court de-
termines that three conditions are met: (1) that "there in-
deed be an 'error,'" *id.* at 732 (quoting Fed. R. Crim. P.
52(b)); (2) that "the error be 'plain,'" a term which is "synon-
ymous with 'clear' or, equivalently, 'obvious,'" *id.* at 734
(same); and (3) that the plain error "affec[t] substantial
rights," *id.* If all three conditions are met, the Supreme
Court held, an appellate court may correct the error if the
error "'seriously affect[s] the fairness, integrity, or public
reputation of judicial proceedings.'" *Id.* at 736 (quoting
*United States v. Atkinson*, 297 U.S. 157, 160 (1936)). Under
the *Olano* test, the appellate court need not determine that
the error was harmless. *See id.* at 734.

The *Olano* decision concerned a forfeited objection to a
nonconstitutional error and therefore does not directly an-
swer the question of what test an appellate court should ap-
ply when reviewing a forfeited objection to a constitutional
error. But four years later, in *Johnson v. United States*, 520
U.S. 461 (1997), the Supreme Court applied *Olano*'s plain
error test to a forfeited objection to a constitutional error. In
that case, the petitioner was charged with making a false
material declaration before a grand jury. *Id.* at 463. The dis-
trict court ruled that the court, rather than the jury, should
determine whether the petitioner's declaration was material.
*Id.* at 464. The petitioner argued for the first time on appeal
that this ruling violated *United States v. Gaudin*, 515 U.S.
506 (1995), which held that the Fifth Amendment's Due Pro-
cess Clause and the Sixth Amendment right to a jury trial
require that a jury determine that the defendant is guilty of

each element of the charged crime. *Gaudin*, 515 U.S. at 509−10. The standard of review was an important issue on appeal in *Johnson*. The government argued that the Supreme Court should apply the *Olano* test because the petitioner had forfeited her objection, while the petitioner argued that the error was a structural constitutional error and could not be reviewed under either the *Olano* test or a harmlessness test.[2] The Supreme Court sided with the Government and reviewed the constitutional error using the *Olano* test. *Johnson*, 520 U.S. at 465−66. The Supreme Court notably did not require the government to prove that the forfeited constitutional error was harmless beyond a reasonable doubt.

The Supreme Court also applied the *Olano* test when reviewing a forfeited objection to a constitutional error in *United States v. Cotton*, 535 U.S. 625 (2002). In that case, the respondents argued that their indictments unconstitutionally failed to allege a fact that increased the statutory maximum sentence in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). As in *Johnson*, the parties disputed what standard of review should apply.[3] The Supreme Court sided with the government and applied the *Olano* test because the respondents had forfeited their objection by not preserving it at trial. 535 U.S. at 631 (citing *Olano*, 507 U.S. at 731, and *Johnson*, 520 U.S. at 466−67). Again, the Supreme Court did not require the government to prove that the forfeited constitutional error was harmless beyond a reasonable doubt.

The Supreme Court's decisions in *Johnson* and *Cotton* show that the Constitution does not require courts to apply *Chapman*'s harmlessness beyond a reasonable doubt test when reviewing forfeited objections to constitutional errors.

---

[2] *Compare* Brief of the Petitioner at 19−23, *Johnson v. United States*, 520 U.S. 461 (1997) (No. 96-203), 1996 WL 741434, at *19−23, *with* Brief for the United States at 10−12, *Johnson*, 520 U.S. 461, 1997 WL 37887, at *10−12.

[3] *Compare* Brief for the United States at 34−37, *United States v. Cotton*, 535 U.S. 625 (2002) (No. 01-687), 2002 WL 264766, *34−37, *with* Brief of Respondents at 38−44, *Cotton*, 535 U.S. 625, 2002 WL 463382, at *38−44.

The standard of review was contested in both cases and in both cases the Supreme Court did not test the constitutional error for harmlessness beyond a reasonable doubt. All of the other United States Courts of Appeals that hear criminal cases agree with this position; none of them applies the *Chapman* harmlessness beyond a reasonable doubt test when reviewing forfeited constitutional objections.[4] Among all these federal courts, our Court is the outlier, and our position is incorrect.

In this case, the Court should apply the material prejudice test required by Article 59(a), UCMJ. The Constitution does not mandate that we reject Article 59(a), UCMJ, and apply a test of harmlessness beyond a reasonable doubt.[5] Under the material prejudice test, I would affirm the judg-

---

[4] The courts in all of the following cases reviewed forfeited objections to constitutional errors using the *Olano* test rather than a test of harmlessness beyond a reasonable doubt: *United States v. Soto*, 720 F.3d 51, 57 (1st Cir. 2013); *United States v. Bruno*, 383 F.3d 65, 78 (2d Cir. 2004); *United States v. Vazquez*, 271 F.3d 93, 98 (3d Cir. 2001); *United States v. Hughes*, 401 F.3d 540, 547 (4th Cir. 2005); *United States v. Mudekunye*, 646 F.3d 281, 289 (5th Cir. 2011); *United States v. Yancy*, 725 F.3d 596, 600−01 (6th Cir. 2013); *United States v. Cardena*, 842 F.3d 959, 979 (7th Cir. 2016); *United States v. Elmardoudi*, 501 F.3d 935, 943−44 (8th Cir. 2007); *United States v. Moreland*, 622 F.3d 1147, 1158 (9th Cir. 2010); *United States v. Turiettta*, 696 F.3d 972, 976, 983−84 (10th Cir. 2012); *United States v. Garcia*, 906 F.3d 1255, 1260 (11th Cir. 2018); *United States v. McGill*, 815 F.3d 846, 875 (D.C. Cir. 2016). The United States Court of Appeals for the Federal Circuit, which does not hear criminal cases, has not addressed the issue.

[5] The principle of stare decisis does not require a different result. As the Court acknowledges, although most of this Court's prior cases have applied the harmlessness beyond a reasonable doubt test to both preserved and unpreserved objections to constitutional errors, some of our precedents have not. *See United States v. Guardado*, 77 M.J. 90, 93−95 (C.A.A.F. 2017). We thus currently have no clear law on this point—a situation dramatically shown by the majority and dissenting opinions of the Court of Criminal Appeals in this case. *See Graves v. Schmidlapp*, 315 U.S. 657, 665 (1942) (declining to apply the principle of stare decisis when faced with multiple conflicting precedents). In addition, reaching the correct conclusion on this issue is very important because in a great many of the cases that we review, the Appellant has forfeited an objection by failing to raise it at trial.

ment of the United States Army Court of Criminal Appeals. I agree with that court's conclusion that, while the forfeited constitutional error in this case may not have been harmless beyond a reasonable doubt, it did not result in material prejudice. *United States v. Tovarchavez*, No. ARMY 20150250, 2018 CCA LEXIS 371, at *21−22, 2018 WL 3570591, at *9 (A. Ct. Crim. App. July 19, 2018).